# BENJAMIN ZIMMERMAN

*vs.*

# JOSEPH GARFINKEL.

*Injunction or Mandamus in Action at Law—Construction of Statute—Separate Claim by Plaintiff—Appointment of Trustee—Bulk Sales Act.*

The statute in regard to sales of stocks of goods in bulk (Code, vol. 3, art. 83, secs. 100-103) does not invalidate the sale as between the parties thereto by reason of the failure to notify creditors of the sale, as provided in the statute.

pp. 397, 398

Under Code, art. 75, secs. 125-127, authorizing the plaintiff in an action at law to direct the issue of summons with claim for mandamus or injunction, and providing that in such case the plaintiff may claim in his declaration, either together with any other demand which may be enforced in such action, or separately, a writ of mandamus or injunction, and requiring the declaration in such case to set forth the grounds on which such claim is founded, and authorizing a demurrer to so much of the declaration as claims such writ, it is necessary, if the injunction or mandamus is asked in a paper separate from the declaration, conceding that this may be done, that such paper be so connected with the declaration by appropriate reference, or otherwise, as to make it a part thereof.          pp. 398, 399

A demurrer to the claim for mandamus or injunction must be a special demurrer in the sense that it must set up particularly the ground upon which the facts disclosed in the declaration are claimed to be insufficient.          p. 400

Code, art. 75, secs. 125-136, providing that a claim may be made by plaintiff in an action at law for the issuance of a writ of mandamus or injunction, did not empower the court, when a suit at law was first brought, and without any notice to the defendant, to appoint a trustee with express authority to take charge of property in controversy and conduct a business which had been purchased by defendant from plaintiff, thus subjecting the defendant to heavy costs and expenses, to require

the defendant to produce certain papers in court, discover and account to the trustee as to certain indebtedness assumed by defendant, and pay to the trustee the money sued for, the costs of the administration of the trust, and the trustee's commissions, and to direct the sale by the trustee of such property and business in case of the defendant's failure to make the required payments.                    pp. 400-403

An order overruling a petition to rescind certain orders for the issuance of units of mandamus and injunction in an action at law, after the court's attention was called to such orders and a hearing had, was a final judgment for the issue of such writs, within the meaning of Code, art. 75, sec. 136, authorizing an appeal from such a judgment.                    p. 404

*Decided January 9th, 1924.*

Appeal from the Superior Court of Baltimore City (HEUISLER, J.).

Action by Joseph Garfinkel against Benjamin Zimmerman, with claim for the issue of writs of mandamus and injunction. From orders issuing such writs, defendant appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*David Ash,* for the appellant.

*Augustus C. Binswanger* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

Joseph Garfinkel sued Benjamin Zimmerman under the Speedy Judgment Act for Baltimore City on March 7th, 1923, and in the declaration stated, "and this suit is brought with claim for mandamus and injunction, for which petition is herewith separately filed." The declaration contains six common counts. The record is not entirely clear as to what papers were intended as the cause of action, but there is annexed to the declaration an account, dated March 7th, 1923,

of Benjamin Zimmerman to Joseph Garfinkel, Dr. which is as follows:

> "Under adjustments attached, in pursuance of agreement of purchase in sale-in-bulk of grocery store, good will, etc., attached of January 25, 1923:
>
> "1923, Feb. 5—To agreed balance of purchase price of 1173 Washington Boulevard for payment of creditors to plaintiff withheld by purchaser to be paid before Feb. 24, 1923, as per adjustment.......................... $787.10
>
> "1923, Feb. 26—By payment by Zimmerman on OK's of Garfinkel in reduction of creditors in amount of......................... $787.10
> "As per advices to A. C. Binswanger....... 391.56
>
> "Balance of purchase price due.......... $359.52"

There then follows in the record another account showing the whole purchase price to be $1,800 and from that are deducted a number of credits as of January 26th and February 5th, 1923, leaving a balance of $787.10 as amount withheld by Zimmerman as stated above. Then there are some creditors named with amounts opposite their names, amounting in all to $243.55, which is one of the credits of February 5th referred to above. This last account is marked, "Approved and ratified" and signed by the vendor and purchaser. Following that in the record is an agreement between the purchaser and vendor dated February 5th, 1923, which we will not copy. After that, there appears in the record, dated January 25th, 1923, an offer by Zimmerman, addressed to Garfinkel, of $1,800 for the assets, stock in trade, fixtures and good will of his grocery and general store, which recites the terms, and Joseph Garfinkel acknowledges receipt of the sum of $250 "to bind the aforesaid bargain of sale and purchase" and accepts the offer on the terms named, adding, "and the above, which is in duplicate, shall constitute the contract between us." After the above there appears a paper which

covers, including the order of court, ten printed pages of the
record, marked "Separate petition for claim for mandamus
and injunction," etc., filed March 7th, 1923.    There then
follow in the record exhibits No. 1 to No. 7, inclusive, to the
petition for mandamus, injunction and appointment of trus-
tee.

We understand from the record that the papers referred
to above, prior to the petition, were intended as the cause
of action on which suit was brought.    We will consider that
suit in connection with the statute on sales in bulk, now to be
found in sections 100-103 of article 83 of the Code, vol. 3.
Later we will consider the statute authorizing a claim for
mandamus or a claim for injunction, or both, which is now
embraced in sections 125-137 of article 75 of the Code.

First: As indicated above, this suit was primarily brought
to recover a balance alleged to be due for a sale in bulk of the
stock in trade, etc., in a grocery store.    We do not want to be
understood by anything we say, or leave unsaid, as determin-
ing that we consider it a valid sale in bulk under our statute.
It is not necessary to determine that, but at least $250 was
paid, the same day or the day after the contract was made, on
the purchase price, and, without referring to other payments,
it is sufficient to say that the $250 was paid before the state-
ment under oath required by section 100 was demanded and
received from the vendor, and before the purchaser had noti-
fied or caused to be notified personally or by registered letter
each of the creditors of the vendor of the proposed purchase
by him of the stock of goods, wares, etc., although the statute
prohibits the payment of the purchase price or any part there-
of by the purchaser without having first demanded and re-
ceived from his vendor the statement under oath, or without
having notified all of the creditors of the vendor as therein
stated.    The statute provides that if those things be not done,
such purchase and sale or transfer shall "as to any and all
subsisting creditors of the vendors be void" (section 101).
But inasmuch as there are no creditors complaining before
us, and apparently the vendor and purchaser seem to have

entered into some contract between themselves, we do not deem it necessary or desirable to say more on that subject, as the statute does not make the sale void as between the parties, or as affecting any persons other than the subsisting creditors.

Second: This brings us to the claim for mandamus and injunction. Section 125 of article 75 provides that:

> "The plaintiff in any action at law (except ejectment and replevin) upon the bringing of the same may, in his order to the clerk to issue in the case, if by titling, or in his order to issue, if endorsed on the declaration, direct that the writ of summons shall be 'with claim for mandamus' or 'with claim for injunction,' (or either or both of them as the case may be), or words to the like effect."

Section 126 provides that:

> "Upon complying with the provisions of the foregoing section the plaintiff may thereupon claim in his declaration, either together with any other demand which may be enforced in such action, or separately, a writ of mandamus, \* \* \* or an injunction," etc.

Section 127 is:

> "The declaration in such action shall set forth sufficient grounds upon which the claim for mandamus or injunction is founded, and that plaintiff is interested therein," etc.

It is clear that, conceding the right to ask for a mandamus or injunction in a separate paper, and not necessarily in the declaration itself, when that is done, such paper, whatever it may be called, must be so connected with it by appropriate reference, or in some way, as to make it part of the declaration, and if it is not a paper with which that can properly be done it is not one within the statute. What we have already quoted from sections 126 and 127, *supra,* and section 128, which provides that,

"The defendant may demur to so much of the plain-
tiff's declaration as claims such writ, and such de-
murrer shall raise the question whether the facts stated
as the ground of such claim disclose any such legal
duty as that so sought to be enforced."

are sufficient to show that if the claim for mandamus or
injunction is not written out in the declaration it must
clearly be made a part of it.

Just what the petition filed in this case can properly be
called, we need not determine, but the plaintiff uses terms in
it which are generally to be found in a bill in equity and not
elsewhere. For example, it begins: "Your orator, complain-
ing, says." Then throughout it uses the term "complainant"
and "orator." It says: "Your complainant is advised and
therefore charges that he is entitled to *equitable relief* to re-
quire the respondent to specifically refrain," etc., and in the
prayers it asks for a mandamus to require the defendant to
bring into court on or before a certain day to be named
therein, the sum of $300, "to be paid to your orator for the
purpose of having your orator liquidate indebtedness incurred
by your orator with creditors as set forth in the bill of com-
plaint," contains a prayer for general relief and other things
which suggest a bill in equity and not such a paper as this
statute evidently contemplates.

But we do not rely on the mere form of the petition to
show that action under it was not authorized as the petition
prays for, and the order of the lower court directed certain
things which seem to us to be clearly beyond the intention of
the Legislature in passing that statute. The only case in-
volving this statute which has reached this Court is that of
the *Chesapeake & P. Tel Co.* v. *Mackenzie,* 74 Md. 36, al-
though it has sometimes been invoked in the circuit court
with which the writer of this opinion is connected, and prob-
ably in some other circuits. In that case, JUDGE McSHERRY
said that the demurrer referred to in section 119 (now 128)
of article 75 was a special demurrer, and that the question

could not be raised by a general demurrer. Mr. Poe, in volume 1 of his work on Pleading and Practice, sections 588A and 747A, took the position that the Court, in reaching that conclusion, obviously meant no more than to declare that the demurrer must be special in the sense that it must set up particularly the ground upon which the facts disclosed in the declaration are claimed to be insufficient, and we are satisfied to adopt that view. Of course, the appellant could not make the demurrer filed in this case a special one by saying, as he does, that the defendant specially demurs to the petition. That is not only not a special demurrer, but it cannot be said to point out specially the ground of objection, unless it be on the question of jurisdiction. But the petition of Benjamin Zimmerman, filed March 20th, 1923, did move and pray the lower court to rescind and strike out the orders of March 6th, 1923, and March 15th, 1923, and the action of the court thereon can be properly considered by us, regardless of the question as to whether it can be deemed in any sense a demurrer.

Without discussing the question whether the Court should have entertained the petition of plaintiff filed March 7th, 1923, at all on March 6th, when it passed the order of that date, inasmuch as neither the declaration nor the petition had been filed when the order was passed, it would seem clear that the court then had no power to pass such an order. There was no case of record then that could have authorized an application for a mandamus or injunction in an action at law. There was not even a titling filed at that time. But without regard to what the appellee may contend is merely a technical question, as he claims in his brief that the declaration and petition had been left with the clerk on March 6th, although not actually filed, we are of opinion that the statute does not contemplate granting a mandamus or injunction, and certainly appointing a trustee *ex parte,* as was here done. The defendant has a right to test by demurrer "the question whether the facts stated as the ground of such

claim disclose any such legal duty as that so sought to be en-
forced," as shown by what we have quoted from section 126,
and we cannot approve of the action of the lower court, if
we ignore the fact that the declaration and petition were not
actually filed until March 7th. This statute made a great
change in our practice when it authorized the lower court in
an action at law to grant a mandamus or an injunction, or
both. It certainly could never have been intended to au-
thorize the issuance of a mandamus to compel the payment
of the money sued for in an action *ex contractu*, or to grant
an injunction, or to appoint a trustee to take over the prop-
erty in controversy, without any notice to the defendant.
The sections already in part quoted are sufficient to show that
such was not the intention.

Then section 129 provides that:

"In case judgment shall be given to the plaintiff
that a mandamus or injunction do issue, it shall be
lawful for the court in which said judgment is given,
if it shall see fit, besides issuing execution in the ordi-
nary way for the costs and damages, also to issue a per-
emptory writ of mandamus, or peremptory injunction
to the defendant commanding him forthwith to per-
form the duty to be enforced, or forbidding him to do,
repeat or continue the wrong against which the in-
junction is claimed."

Then section 134 is:

"Whenever the party claiming any of the above
writs would be in any ordinary action entitled to an
interlocutory judgment by default, he shall be entitled
in any of the actions referred to in the nine foregoing
sections to a final judgment that the writ or writs
claimed do issue."

There was no such default in this case. On the contrary,
the suit had just been entered and the defendant had the time
allowed by the statute and rules to file pleas to the declara-

tion, as later he did, and therefore there could be no claim of right to proceed as was done in the lower court under section 134.

It is true that Section 135 provides that:

> "Any party to any action at law, after the commencement thereof and whether before or after judgment, may apply by motion *ex parte* to the court in which it is pending for a writ of injunction to restrain the other party in such action from the repetition or continuance of the wrongful act or breach of contract complained of," etc.

but that section concludes:

> "A judgment may be given that such writ may be granted or denied by the court upon such terms as to the duration of the writ, keeping an account, giving security or otherwise as to such court may seem reasonable and just."

Of course that section in no way applies to this case, but even when an application for a writ of injunction may be made after the commencement of the suit, the parties are in court and not likely to be taken by surprise, as they would be under such practice as was adopted in this case. Moreover, that section only applies to an injunction, and not to a mandamus, and certainly does not authorize the appointment of a trustee to take charge of the property in controversy as was done in this case.

Section 136 provides that:

> "A judgment for the issue or refusing the issue of any of the writs referred to in any of the ten foregoing sections shall be subject to the same right of appeal as other final judgments," etc.

When those sections are carefully considered, can such a petition as the one in this case give the court the right to pass *ex parte,* when the suit is first brought (in this case before it was even docketed) such orders as those dated March 6th,

1923, and March 15th, 1923? Surely not. The one of
March 6th not only commanded Zimmerman to bring into
court, on or before the 20th of March, 1923, the balance of
the purchase money due by him to Garfinkel and to produce
all bills of creditors of the grocery store showing payments
made to such creditors on account of the indebtedness due
them by Garfinkel for merchandise or otherwise, prior to
January 25th, 1923, but it required him to discover to the
trustee therein appointed and account for all the indebtedness
due unpaid creditors of Garfinkel, and for any allowance in
larger amount to him than is payable by or was paid by
Zimmerman to creditors. But it did not stop there. The
order appointed a trustee to administer the assets under the
orders of court, authorized him to employ clerical help not
to exceed $25 a week and to pay current expenses for gas,
electricity and miscellaneous sundries not to exceed $25 a
week, and out of daily receipts of the business to purchase the
customary and necessary fresh products and groceries which
are usually necessary to replenish perishable food products,
etc. In short, it authorized this trustee to take charge of
that business and to do what would necessarily involve the
defendant in heavy costs and expenses. All that was before
the defendant had an opportunity to make his defense in the
suit brought at law. Then, on the 15th of March, 1923, the
court authorized the trustee to receive from the defendant
the sum of $281.88, the agreed balance due on the purchase
price of the sale of the grocery business and directed that the
defendant pay the costs and the sum of $39.50, the expenses
to date of the administration, and further, that he bring into
court to be paid to the trustee the sum of $75 in lieu of all
commissions due to the trustee and in full of compensation
to the trustee's counsel, "aforesaid payments, aggregating the
sum of $421.38, to be paid to the trustee on or before the
20th of March at one P. M." and then the order went on to
provide that on failure to receive said sum, the trustee should
advertise for sale at public auction the stock in trade, good

will, etc., in one of the daily newspapers published in Baltimore City.

We do not find any basis for such action in the statute. We have been referred to section 132, authorizing the appointment of a trustee, but that clearly does not give any such authority, as it only provides appointing the plaintiff or some other person, at the expense of the defendant, in addition to or instead of proceeding against the disobedient party by attachment. But even then, the section goes on to provide that:

> "Upon the act being done, the amount of such expense may be ascertained by the court either by a writ of inquiry or reference to an auditor as the court shall order."

and does not attempt to make provision for the appointment of such a trustee as was appointed in this case.

The court, on March 24th, 1923, overruled the demurrer to the petition of the plaintiff and dismissed the petition and motion of the defendant to rescind the orders of March 6th, 1923, and of March 15th, 1923. As already indicated by us, the demurrer was not in shape and was properly overruled, but we think that the action of the court on the motion to rescind must be treated as the judgment of the court sustaining the issuance of the writs. As the court in our judgment had no power to pass such orders, after its attention was called to them and a hearing had, this is in effect an appeal from a final judgment as contemplated in section 136. The defendant appealed from the orders of the 6th of March, 1923, of the 15th of March, 1923, and of the 24th of March, 1923, and each and every part thereof.

> *The orders of the 6th of March and the 15th of March, 1923, and the order of the 24th of March, 1923, dismissing the petition and motions of defendant to rescind the orders reversed, the appellee to pay the costs above and below.*