BAUMOHL ET AL. *v.* COLUMBIA JEWELRY COMPANY OF ANNAPOLIS, MARYLAND, ET AL.

[No. 93, October Term, 1955.]

*Decided March 9, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

Submitted on brief by *Joseph W. Spector* and *Donald T. A. Fair* for the appellants.

*Edward F. Shea, Jr.,* with whom were *Joseph Sherbow, Harold Lewis* and *Sherbow & Sherbow* on the brief, for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

The appellants in this case, Norman Baumohl and Jacob P. Baumohl, filed a bill in equity in the Circuit Court No. 2 of Baltimore City against Columbia Jewelry Company of Annapolis, Maryland, a Maryland corporation (usually referred to below as "Columbia"), Sidney A. Needle, The Equitable Trust Company (of Baltimore), a Maryland corporation (usually referred to be-

low as the "Equitable"), H. H. Hoene, an assistant trust officer of the Equitable, and Mace Silverman. The relief sought was in brief: (a) a declaration that the alleged sale of the assets of Columbia made through Mr. Needle to Mr. Silverman was null and void; (b) an injunction against consummation of the sale; (c) the appointment of a receiver for Columbia on the ground of insolvency; and (d) such other and further relief as might be required. The respondents demurred to the original bill and their demurrer was sustained, with leave to amend. The complainants then filed an amended bill, the respondents again demurred and their demurrers were again sustained, this time without leave to amend; and the appeal is from the order sustaining the demurrers and denying leave to amend.

The sale which is under attack was arranged to raise funds to satisfy a large claim of the United States Government for income taxes due. Mr. Needle, acting as agent for Columbia, invited several persons, including the complainant, Jacob P. Baumohl, to submit sealed bids for the purchase of all of the assets of Columbia. Mr. Mace Silverman, one of the respondents, submitted the highest bid, which was $68,250. The bill alleges that on or shortly after October 29, 1954, Needle announced that Columbia's assets would be turned over to Silverman and that the proceeds of sale would be paid over to the Government in satisfaction of the alleged tax lien. On November 12, 1954, Jacob P. Baumohl filed a complaint in the United States District Court for the District of Maryland against the United States Internal Revenue Service, Columbia, Needle and Silverman, seeking to upset the sale and asking that Court to take jurisdiction of the matter and consider a new bid by Baumohl which would top Silverman's by $750. Motions to dismiss were filed on behalf of the defendants. They were granted by Judge Thomsen for want of federal jurisdiction. His opinion, 127 F. Supp. 865, filed January 28, 1955, shows (as did Mr. Needle's affidavit) that no lien had been filed for taxes due the United States and hence

that the projected sale could not be to enforce such a lien. He held that the case did not arise under the laws of the United States, that the Government had not been, and without its consent could not be, properly made a party and that since the remaining parties, Baumohl, Columbia, Needle and Silverman were all citizens of Maryland, diversity of citizenship was lacking.

An affidavit by Mr. Needle was filed in the Federal Court in support of a motion to dismiss, which stated, among other things, that no lien had been filed, and a copy of this affidavit was filed in the Circuit Court No. 2 as an exhibit to a motion by the respondents to strike out the three new paragraphs which were added to the original bill by the amended bill, which was filed on June 6, 1955.

A copy of Mr. Needle's affidavit is included in the appellants' appendix and it is discussed in their brief. It is also referred to in the appellees' brief. Though it may not have been properly made a part of the record on demurrer, it appears to be the affidavit referred to in Paragraph Eleventh of the bill, it was filed on the same day as the demurrer to the amended bill, and it has been treated by both sides as if it were properly before this Court. There is nothing to show that it was actually brought to the attention of the Chancellor or taken into consideration by him, and there is no ruling on the motion to strike. On the other hand, his oral opinion did deal specifically with the three paragraphs added by the amended bill, and he found them to be insufficient. Since the appellants have sought to base a large part of their argument on this affidavit, it seems that they are in no position to complain of its use against them.

The amended bill contains these allegations with regard to the asserted interest of the appellants in the sale and in Columbia: (1) that Norman Baumohl is a director and treasurer of Columbia and is a director of U. S. Jewelry Company, Inc., a Maryland corporation ("U. S. Jewelry"), which owns 100% of the stock of

Columbia; (2) that Jacob P. Baumohl is the life beneficiary under a trust established in 1931 and amended in 1945 by the late Harry E. Baumohl, and is a director of Columbia and of U. S. Jewelry; (3) that Harry E. Baumohl owned all of the issued and outstanding stock of U. S. Jewelry and died on or about November 1, 1951, and that his estate is still being administered in the Orphans' Court of Baltimore City. No copy of either the trust agreement or the will of Harry E. Baumohl is included in the record. It is not clearly stated in the bill whether Harry E. Baumohl's stock in U. S. Jewelry is an asset of the trust or of his estate. We must turn to the appellees' brief to learn that the U. S. Jewelry stock now is included in the estate of Harry E. Baumohl and that under his will it is to be included in the trust assets. Mr. Jacob Baumohl complains that he has received no income from the trust.

The bill identifies the Equitable as a co-executor of the estate of Harry E. Baumohl. The appellants' brief (but not their bill) states that Mr. Needle is also a co-executor.

The grounds of complaint as to the validity of the sale are: first, failure to comply with the Sales in Bulk Act (Code (1951), Article 83, Section 97, *et seq.*); second, failure to comply with certain provisions of the General Corporation Law contained in Code (1951), Article 23, relating to the sale of all or substantially all, of the assets of a corporation (Sections 62 and 66), and to voluntary liquidation (Section 72, *et seq.*); and third, alleged conflict of interest on the part of Columbia's agent.

As to the last contention, which was raised by the three paragraphs added in the amended bill, the Chancellor described them as "simply * * * general allegations of wrong-doing, or of suspicion of wrong-doing, without any facts sufficiently definite to support them as legal allegations which give a cause of action to the complainants." These allegations do nothing towards strengthening the appellants' legal interest in the sale,

and therefore no more need be said of them in order to decide this case.*

One other allegation of the bill seems worthy of note at this point. Paragraph Sixth reads as follows: "That according to the best information available to your Orators, the Defendant, the Columbia Jewelry Company of Annapolis, Maryland, is indebted to its creditors, including an indebtedness to the United States Government for income tax due in an amount far in excess of the total value of its assets, is hopelessly and completely insolvent and is unable to meet its obligations as they severally fall due and mature."

This allegation demonstrates that whatever indirect interest Mr. Jacob P. Baumohl might claim to have in the stock of Columbia through his life estate (or any other interest) under the will and trust agreement of Harry E. Baumohl in stock of Columbia's parent corporation is completely worthless. For good measure, the appellants add the allegation that Columbia is "hopelessly" insolvent and thus eliminate any optimistic or speculative value such as is often claimed for the stock of insolvent corporations. It would, therefore, seem clear that no irregularity in the sale complained of, and indeed no inadequacy of price, could have caused the complainant, Jacob Baumohl, any pecuniary loss in connection with the stock of Columbia. (See Code (1951), Article 16, Section 123, which denies jurisdiction to courts of equity "wherein the original debt or damages does not amount to twenty dollars.")

The appellants do not assert a stock interest in Columbia, but try to bring themselves within the definition of a creditor in order to attack the sale under the Sales in Bulk Act. They rely upon a very broad meaning of

---

* The appellants' brief quotes from Mr. Needle's affidavit a statement to the effect that a Mr. Kolker, who was a client of Mr. Needle, telephoned an associate in Mr. Needle's office, said that he had offered Mr. Silverman $42,500 for Columbia's real estate if Silverman was the high bidder, that Silverman had apparently agreed to this price, and asked Mr. Needle's associate to prepare an agreement to this effect and that Mr. Needle understood he had done so. From this the appellants deduce that Mr. Needle was representing Silverman as well as Columbia and Kolker. We think this an unwarranted deduction. It may be added that Mr. Needle's affidavit shows that Mr. Silverman was represented by entirely different counsel.

the term, which is given in *Black's Law Dictionary* as, "one who has a legal right to demand and recover from another a sum of money on any account whatever, and hence may include the owner of any right of action against another, whether arising on contract or for a tort, a penalty, or a forfeiture." The appellants claim in their brief that Jacob P. Baumohl is a creditor of Columbia because he is the beneficiary of a life estate under the Harry E. Baumohl trust "which was to pay him $250 a week." (The quoted statement is not to be found in the bill.) They also seem to take the position that their being officers or directors of Columbia and of U. S. Jewelry in some way makes them "creditors" of Columbia or gives them some standing under the Sales in Bulk Act. To arrive at the astonishing result of their being creditors of Columbia, they ignore a part of the definition which they quote. They say that a creditor is "the owner of any right of action against another." They skip over the clause of the definition which limits it to "one who has a legal right to *demand and recover* from another *a sum of money."* (Italics supplied.) No sum of money is shown to be due from Columbia to either of the complainants in any capacity. This contention can be dismissed without further remark, except: (1) that the Sales in Bulk Act is for the protection of creditors and that a failure to comply with it does not invalidate a sale as between the parties. *Zimmerman v. Garfinkel,* 144 Md. 394, 124 A. 919; *Fifer v. Hoover,* 163 Md. 381, 163 A. 848; and (2) that no personal liability of any kind is shown or said to rest or to be imposed upon either of the complainants by reason of noncompliance with the Sales in Bulk Act.

With regard to alleged non-compliance with the provisions of Sections 62 and 66 of Article 23 relating to the sale of all or substantially all of the assets of a corporation, we think that the appellants have failed to state a case for the interposition of an equity court. Columbia was in a desperate position, being threatened with the levy of a lien for a tax deficiency which would

wipe it out. Through Mr. Needle's efforts the actual levy was withheld and bids were obtained from a number of bidders, including Jacob P. Baumohl. In his capacity as an unsuccessful bidder he is hardly in a position to complain of any irregularity in the corporate proceedings through which he sought to buy the assets.

Returning to the position of the complainants as officers or directors of Columbia or of U. S. Jewelry, we find that they allege that the respondents maintain that the sale is legal and will be consummated, and that there has been a partial transfer of assets to Silverman. This does not amount to an allegation that the provisions of Sections 62 and 66 will be disregarded or violated. It seems highly probable that this litigation and that which preceded it in the District Court have delayed consummation of the sale, but we see nothing in the bill which would require the conclusion that proper Maryland corporate procedure would be disregarded. It is hardly to be supposed—and certainly the bill does not allege—that the proposed sale was negotiated or that arrangements were made to pay or satisfy the tax claim without the knowledge and approval of Mr. Needle's co-executor of the estate of Harry E. Baumohl. The inference to be drawn from the bill is clearly to the contrary; otherwise no reason is apparent for joining the Equitable and one of its trust officers as parties. Mr. Needle and the Equitable had the right as co-executors to vote the stock (which was all of the stock) of U. S. Jewelry (Code (1951) Article 23, Section 40(b)), and U. S. Jewelry owned all of the stock of Columbia and could vote it through its president, vice president or other duly authorized proxy (Article 23, Section 40(a)). Any necessary corporate meetings of the board of directors and of the stockholders of Columbia could undoubtedly have been called and held quickly. Indeed, a formal meeting of Columbia's stockholders could even have been dispensed with entirely through an appropriate instrument in writing signed by its sole stockholder. Article 23, Section 43. A board meeting might also have been dispensed with

under Article 23, Section 54, but for the presumed opposition of the complainants. No reason is discernible, insofar as the interests of either Columbia or its sole stockholder are concerned, for their opposition; the only apparent reason for their opposition seems to be Jacob P. Baumohl's desire to purchase Columbia's assets for himself. The discharge of his fiduciary duties as a director of Columbia would neither require nor permit him to use his position for the purpose of promoting his personal interest in acquiring Columbia's assets; nor would the discharge of Norman Baumohl's like duties require or permit him to use his position to promote the personal interest of a would-be purchaser.

There is nothing in Section 62 or 66 of Article 23 which prevents a corporation from seeking or obtaining bids for the sale of all of its assets. It seems quite appropriate, as the appellees point out, to have a bid in hand before calling a meeting of the board of the selling corporation to approve the terms of sale and to recommend the sale to the stockholders.

In view of the failure of the bill to allege that corporate requirements for the sale of assets will not be complied with, we find it unnecessary to prolong this opinion by considering whether or not these complainants, who are not stockholders, have any standing as officers or directors of Columbia to maintain this suit in which, by their own allegations, neither that corporation nor its sole stockholder, can either profit or suffer loss by the transaction sought to be prevented.

Much the same may be said with regard to the requirements of the corporation law with regard to voluntary dissolution as has just been said with regard to the requirements pertaining to the sale of assets.

There is no allegation in the bill that Columbia is being voluntarily dissolved. It may not require any gift of prophecy to see or to foresee the early end of its business existence, and the end of its corporate existence may rather confidently be anticipated. However, as was said in *Inasmuch Gospel Mission v. Mercantile Trust Co.*, 184

Md. 231, at 237, 40 A. 2d 506, at 509: "Even though a corporation may cease to function on account of its financial condition or as a result of proceedings against it, it cannot be considered as dissolved until it has been so adjudged by the sovereign power or by judicial decision. The surrender of a charter can be made only by some formal act of the corporation, and will be of no avail until accepted by the State." A number of authorities in accord with that view are cited in that case.

Here no actual proceedings for voluntary dissolution have been initiated, and we think that the provisions of Section 75 of Article 23, therefore, are not now applicable. That Section allows a stockholder, director or creditor of a corporation in voluntary dissolution to file a petition asking a court of equity to take jurisdiction of the liquidation of the corporation and authorizes the court, "for cause shown and within its sound judicial discretion," to order the corporation to be liquidated under its supervision either by the directors as trustees or by one or more receivers appointed by the court. Unless the court should take jurisdiction, the directors would conduct the liquidation as trustees under Section 74. Even if Section 75 could be considered as applicable, there is nothing alleged in the bill which would call for the exercise of jurisdiction thereunder. The entire proceeds of sale are to be applied towards the claim of a creditor, the United States, which is entitled to priority; and on the allegations of the bill no one else would have any hope of realizing anything from the liquidation, and hence no one else would appear to have any interest in it. The Government is not a party to the present proceedings; and, so far as we are informed, it has interposed no objection to the sale. On the contrary, it appears that the proposed sale and application of proceeds are conditioned upon the Government's assent.

Since we find no merit in any of the appellants' contentions, we shall affirm the order.

*Order affirmed, with costs.*